IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LAKEISHA HAMILTON,

        Plaintiff,                         Case No.

v.                                                Judge
                                                    Magistrate Judge
SAINT THOMAS HEALTH,            JURY DEMAND
        Defendant.
_____/

## COMPLAINT

Defendant Saint Thomas Health (STH) ignored the plain language of the ADAAA when its managers created a hostile work environment and then terminated Plaintiff, LaKeisha Hamilton, due to her disability and protestations of discrimination. For over five years, Ms. Hamilton worked without incident within her reasonable accommodation of three 12-hour shifts per week as a Clinical Case Manager. After getting a new manager in 2018, STH management questioned why she needed a workplace accommodation and refused to acknowledge or continue to provide her existing accommodation. In retaliation for Ms. Hamilton protesting the discrimination on the basis of her disability and asserting her rights to an accommodation, STH abruptly terminated her career. STH claimed she did not have the correct license, even though she had received confirmation several years prior stating that she had the education and experience, including a bachelor's degree in psychology, four years of medical school, and a master's degree in psychology, to fulfill the duties of her position. STH violated both the Americans with Disabilities Act and the Tennessee Disability Act.

## PARTIES

1.      Plaintiff, LaKeisha Hamilton, ("Plaintiff" or "Ms. Hamilton") is a citizen and

1

resident of Nashville, Davidson County, Tennessee, and a former employee of Defendant. Plaintiff worked at Defendant's Nashville, Tennessee location.

2. Defendant Saint Thomas Health ("STH") is a Tennessee nonprofit corporation. Its registered agent for service of process is Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312. At all material times, Defendant has been an employer as defined by the ADA and under state law.

3. At all material times Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

## JURISDICTION AND VENUE

5. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Counts I - II) and Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts III and IV).

6. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

7. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

8. Plaintiff, LaKeisha Hamilton, was employed by Defendant since 2008, most recently in the position of Case Manager.

9. Ms. Hamilton received a Bachelor of Science degree in Psychology from Tennessee State University in 2001. She attended Medical School at Saint James School of Medicine and completed all coursework in 2005. Ms. Hamilton did not receive a degree from Saint James School of Medicine because, due to her disability, she was unable to complete all graduation requirements. She received a master's degree in Psychology from Tennessee State University in 2014.

10. Ms. Hamilton is a qualified individual with a disability under 29 C.F.R. §1630.2(h).

11. Defendant is a nonprofit corporation that manages hospitals and physician practices in Middle Tennessee.

12. Ms. Hamilton was hired on February 4, 2008 as a Discharge Coordinator at Defendant's Saint Thomas West hospital. Ms. Hamilton excelled in that position and in June 2013, Plaintiff was promoted to Clinical Case Manager.

13. Ms. Hamilton suffers from a disability and due to the symptoms of her disability, took a FMLA leave in 2013. At that time, she requested a reasonable accommodation under the ADAAA and was granted a schedule change so that she worked three 12-hour shifts per week, on the weekends.

14. At all times, Ms. Hamilton was qualified for her job with Defendant and performed her job duties in a competent and satisfactory manner.

15. On June 30, 2014, Defendant sent Plaintiff a Memorandum from their Human Resources Office stating that she was grandfathered and exempt from the education/license/certification requirement of the Clinical Case Manager position. The memorandum specifically stated, "This employee has been deemed competent and is able to fulfill

3

Case 3:20-cv-00128   Document 1   Filed 02/12/20   Page 3 of 9 PageID #: 3

the essential functions of their position." See Memorandum attached as Exhibit A.

16. In 2016, Ms. Hamilton became pregnant and gave birth to a child. She took FMLA leave then. Upon returning from her FMLA leave, she completed the online ADA process for STH and was again granted a reasonable accommodation to work three 12-hour shifts per week.

17. In October 2018, Ginger Simpson, a new manager of Plaintiff's work unit, approached her and requested her to change her hours to working 10-hour shifts. At that time, Plaintiff informed Ms. Simpson that she had a reasonable accommodation to work 12-hour shifts and directed her to human resources. Ms. Simpson continued to question Plaintiff about her reasonable accommodation and Ms. Hamilton self-reported her disability to Ms. Simpson and requested to maintain her reasonable accommodation.

18. During that conversation, she told Ms. Simpson that due to her disability she required more time to complete work than other and that she worked best in quiet areas, thus a 12-hour shift on the weekends was a reasonable accommodation that the hospital had provided her for years.

19. In January 2019, Ms. Hamilton received an email from her Team Lead, who reports to Ms. Simpson, asking if she could work 10 hours on a "temporary bases [sic]." Ms. Hamilton responded that she could not change her hours at that time.

20. On February 11, 2019, Ms. Hamilton was called into a face-to-face meeting with Terri Donati. Patty Matney from Human Resources was on the telephone. They asked her questions about her degrees and reviewed the grandfather document (Ex. A) with her.

21. On February 19, 2019, Ms. Hamilton went to the HR office in person to ask about her accommodation status and find out whether it was appropriate for her supervisor to be asking her specific questions about her disability, her symptoms, and her ability to work 10 hour shifts.

4

22. During this time, Ms. Hamilton experienced a flare-up of her symptoms due to anxiety caused by the pervasive questioning of her disability symptoms, her accommodation, and her work hours. Ms. Hamilton notified her supervisor that she needed to take time off from work in order to consult her medical doctor and receive treatment. Ms. Hamilton used her personal time off (PTO) for this time off.

23. On or after March 4, 2019, Plaintiff's medical doctor submitted another request for accommodation online to STH.

24. On March 7, 2019, Ms. Hamilton worked her regular shift until 2 p.m. when she was called into a meeting with Terri and was told that she was being terminated.

25. Defendant's representatives told Ms. Hamilton that despite her grandfather document, and despite having a bachelor's degree, a master's degree and completing 4 years of medical school, that she was not qualified for her current position because she did not have a degree in nursing or a license in social work. She was escorted to her office and forced to pack up all her belongings and leave the hospital immediately.

26. Later, Ms. Hamilton was offered a position of Coordinator, Case Management at a rate of $16.28 per hour, a substantial demotion of her pay and responsibilities. Ms. Hamilton declined the position.

## Count I
## Violation of ADA/ADAAA- Disability Discrimination

27. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

28. Pursuant to the ADAAA, an individual is considered to have a disability if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

5

29. Plaintiff was a qualified individual with a disability; she had a disorder that affected her mental health and neurological system, and was an impairment that substantially limited her in one or more major life activities.

30. Defendant discriminated and retaliated against Plaintiff on the basis of her disability in violation of the ADA that culminated in her termination.

31. Plaintiff could perform the essential functions of her job. Plaintiff made a request for reasonable accommodation, including, but not limited to, work three 12-hour shifts per week.

32. Plaintiff was discriminated against and eventually terminated because of her disability and/or in retaliation for his request for a reasonable accommodation.

33. The adverse actions Plaintiff endured, including, but not limited to, inquiries into her medical history and termination were because of her disability.

34. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

35. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of ADAAA- Retaliation

70. Plaintiff restates and incorporates herein the foregoing paragraphs.

71. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights under state law without fear of reprisal or penalty from an employer.

6

Case 3:20-cv-00128   Document 1   Filed 02/12/20   Page 6 of 9 PageID #: 6

72. Plaintiff engaged in protected activity under the ADA when she requested an accommodation and objected to and protested disability harassment/discrimination in the workplace. Plaintiff requested an accommodation and reported disability discrimination and harassment to the human resources department. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

73. In violation of the ADAAA, Defendant retaliated against Plaintiff by subjecting Plaintiff to a retaliatory hostile work environment and discharging her employment in retaliation for exercising her rights under the ADAAA.

74. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's request for an accommodation, and report of discrimination and harassment, Defendant took adverse employment actions against Plaintiff for a pretextual reason.

75. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

**Count III**
**Violation of TDA- Disability Discrimination**

36. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

37. Pursuant to the TDA, an individual is considered to have a disability if he or she has a physical or mental impairment that substantially limits one or more major life activities.

38. Plaintiff was a qualified individual with a disability.

39. Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

7

Case 3:20-cv-00128   Document 1   Filed 02/12/20   Page 7 of 9 PageID #: 7

40. Plaintiff was discriminated against and eventually terminated because of her disability.

41. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

42. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

## Count IV
## Violation of TDA- Retaliation

76. Plaintiff restates and incorporates herein the foregoing paragraphs.

77. It is the public policy and state law of Tennessee that employees must be able to exercise their rights under state law without fear of reprisal or penalty from an employer.

78. Plaintiff objected to and protested disability discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under TDA. Plaintiff was forced to disclose her disability to her manager who questions why she refused to work a certain shift. Plaintiff also reported her manager's behavior to Human Resources and asked whether it was a violation of the law to treat her that way.

79. In violation of the TDA, Defendant retaliated against Plaintiff discharging her employment in retaliation for exercising her rights under the TDAA.

80. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's complaints and protests of disability discrimination in the workplace, Defendant took adverse employment actions against Plaintiff for a pretextual reason.

81. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and reimbursement for medical costs due to the loss of her insurance;

3. Reinstatement or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Punitive damages;

6. Attorneys' fees and expenses;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled under the ADAAA, the TDA, and any other statutory or common law.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com

*Attorneys for Plaintiff*